577 N.W.2d 71 (1998)
In the Matter of Honorable James M. JUSTIN Judge, 12th District Court Jackson, Michigan.
Docket No. 111302.
Supreme Court of Michigan.
February 24, 1998.
On order of the Court, this Court having received the decision of the Judicial Tenure Commission and its recommendation for an order of public censure, and having the respondent's stipulation to the commission's findings set forth in (1) through (16), infra, and his consent to the recommended public censure, we adopt the following portion of the Judicial Tenure Commission's decision and recommendation for order of discipline:
1) Respondent is now and was, at all times mentioned, a judge of the 12th District Court in the City of Jackson, County of Jackson, State of Michigan.
2) In 1985, the 13th District Court was merged into the 12th District Court to become a unified county-wide district court. At that time, the funding unit for the former 13th District Court became Jackson County rather than the City of Jackson.
3) As a result of this court merger, several employees who were enrolled in the City of Jackson pension plan became county employees, thereafter earning future entitlements pursuant to the Jackson County pension plan.
4) In 1989, the City of Jackson modified its pension formula providing increases for the current members. The former 13th District Court employees were not included, which Respondent believed to be to their financial detriment.
5) Respondent had discussions with the City of Jackson Pension Board and city officials seeking to have the city increase pension benefits for the former 13th District Court employees. The decision was made to deny the increased pension benefits which Respondent had requested.
6) Respondent expressed his unhappiness or dissatisfaction with this decision to the Jackson City Attorney.
7) In 1995, with respect to City of Jackson ordinance matters, Respondent began a practice of frequently assessing a presentence fee of $100 or more, payable to Jackson County, even in cases where a defendant might not be referred to the probation department for a presentence report. Such fees were imposed in lieu of the usual fines and costs, which would be payable in statutorily prescribed percentages to the City of Jackson. As to these City of Jackson cases, Respondent imposed only nominal fines and costs.
8) After the City of Jackson experienced a substantial drop in its revenues derived from fines and costs, the matter was brought to the attention of the Chief Judge of the 12th District Court. On May 9, 1995, the Chief Judge sent Respondent a letter directing that Respondent cease any improper practices, and see that the City of Jackson was credited with those ordinance fines and costs to which it was entitled.
9) Respondent nonetheless continued the same practices in City of Jackson ordinance cases. This is reflected in a Memorandum to Respondent from the Chief Judge, dated July 3, 1995, in which the Chief Judge stated his observations from reviewing several ordinance cases assigned to Respondent. The Chief Judge noted that Respondent had placed only $1 in the column for ordinance fines and costs, and made most of the assessment in presentence fees, even though no presentence had been ordered. The Chief Judge's Memorandum further stated that this was an "intentional act" by Respondent to "punish" the City of Jackson for not increasing the pension provisions for the former city employees and also described it as a "fraud" upon the City of Jackson. Respondent was also advised that his conduct would lead to a referral to the State Court Administrative Office.
10) Following discussions with a Regional Administrator for the State Court Administrative *72 Office, Respondent agreed to cease the practice of assessing $1.00 in fines and costs for ordinance cases and directly deal with the City of Jackson on the pension issue.
11) When the pension issue for former 13th District Court employees was not resolved to Respondent's satisfaction, Respondent again began the practice of diverting funds which normally would go in statutorily-mandated percentages to the City of Jackson as fines and costs, by characterizing the sums assessed as presentence fees, which were earmarked for the County. The continuation of this practice led the Chief Judge to refer the matter to the State Court Administrative Office on February 20, 1996.
12) The City of Jackson sought Respondent's disqualification in all cases involving ordinance matters, which Respondent denied in an Opinion and Order dated December 4, 1996.
13) The Chief Judge then disqualified Respondent from any matters involving City of Jackson Ordinances or Housing Commission cases in an Opinion and Order dated December 4, 1996.
14) In April, 1997, the City of Jackson and Jackson County entered into a settlement agreement and release whereby the City of Jackson agreed to accept payment of the sum of $28,000 from the County in exchange for any claims for damages it might otherwise have arising out of Respondent's handling of fines and/or costs and presentence fees in city ordinance cases, as described hereinabove.
15) Respondent's conduct was adopted as a protest and intended to "send a message" to City of Jackson officials. It further gave the appearance of a willful refusal to follow established practices and procedures in the 12th District Court concerning fines, costs and presentence fees, and created a public impression Respondent harbored personal animus towards the City of Jackson.
16) Respondent's conduct, as described in paragraphs 1) through 15) above, constitutes:
(a) Misconduct in office as defined by the Michigan Constitution 1963, Art. VI, § 30, as amended;
(b) Conduct clearly prejudicial to the administration of justice as defined by the Michigan Constitution 1963, Art. VI, § 30, as amended and MCR 9.205;
(c) Irresponsible or improper conduct generating unnecessary public controversy which erodes public confidence in the judiciary, contrary to the Code of Judicial Conduct, Canon 2A;
(d) Conduct involving impropriety and the appearance of impropriety, contrary to the Code of Judicial Conduct, Canon 2A;
(e) Allowing social or other relationships to influence a judge's conduct or judgment, contrary to the Code of Judicial Conduct, Canon 2C; and
(f) Conduct violative of relevant portions of MCR 9.104 in that such conduct:
is prejudicial to the proper administration of justice, contrary to MCR 9.104(1); and
exposes the legal profession or courts to obloquy, contempt, censure or reproach, contrary to MCR 9.104(2)
In determining an appropriate sanction, the Commission has considered Respondent's acknowledgment of misconduct and his stated willingness to abide by the Commission's determination that such conduct was improper and his promise to adhere to established practices and procedures at the 12th District Court with respect to fines, costs and presentence fees, and to not repeat the conduct which is the subject of this Decision and Recommendation for Order of Discipline should Respondent be restored to hearing City of Jackson cases.
The Judicial Tenure Commission having found that the respondent committed misconduct, the respondent having stipulated to the above-mentioned findings of the commission, and the respondent having consented to public censure, we order that the Honorable James M. Justin, Judge of the 12th District Court, be and hereby is publicly censured.
*73 This order shall stand as the Supreme Court's censure.